HORACE HEARD *vs.* WINDSOR FAIRBANKS & another.

Though standing corn and potatoes in the ground may be attached on mesne process, if they are fit for harvest, yet a valid attachment can be made only by severing them from the freehold, and keeping them in the officer's custody.

THIS was an action of trover, brought by a deputy sheriff and the case was submitted to the court on the following agreed statement of facts :   On the 9th of October 1841, a writ against Ebenezer Whitney, one of the defendants, in favor of Ebenezer Loker, and returnable before a justice of the peace on the 16th of said October, was delivered to the plaintiff for service.   The plaintiff, on said 9th of October, went into a field, belonging to said Whitney, in which there was then a quantity of corn standing and· fit to be harvested, and a quantity of potatoes in the ground, fit to be dug, and in writing appointed Isaac Coggin as his agent to keep said corn and potatoes, as attached by him on said writ ; and said Coggin agreed so to do.   The plaintiff duly returned the writ, stating in his return, that he had attached certain corn and potatoes ; which are the same that are mentioned in the plaintiff's declaration.   At the time of said attachment, the defendant Fairbanks held a mortgage, made by said Whitney, of the produce of the land (for the year 1841) in which said corn and potatoes grew, which mortgage was duly recorded, and is still in force.

On the 14th of October 1841, the defendants went upon said

land, gathered the corn and potatoes, and carried them away, though they were told by said Coggin that the same had been attached by the plaintiff, and that he (Coggin) was appointed keeper thereof, and though Coggin forbade them to carry the same away.

Judgment in the suit against said Whitney was duly rendered on the 16th of October 1841, and execution thereon was taken out and delivered to the plaintiff, within thirty days, with directions to levy it on said corn and potatoes. But the plaintiff could not find said property ; and he returned the execution unsatisfied, and it still remains so.

*Mellen*, for the plaintiff.

*Josiah Adams*, for the defendants.

HUBBARD, J. It has been contended in this case that the property, which the plaintiff claims to have attached, was a part of the realty, and therefore that the intended attachment was unavailing ; and many authorities have been cited on both sides, as to the legal character and nature of property growing upon land or connected with real estate. In the case of *Miller* v. *Baker*, 1 Met. 32, where a question arose as to the attachment of trees and plants, Dewey, J. in giving the opinion of the court, says, " whether they might be attached without an actual seizure and taking possession, being considered as falling within a class of persona. property that cannot easily be removed, (as buildings erected on the land of another,) may be a subject for consideration in some future case." But we do not think the present case calls for a discussion of the question. In the case of *Penhallow* v. *Dwight*, 7 Mass. 34, the court decide that " corn or any other product of the soil, raised annually by labor and cultivation, is personal estate, and would go to the executor, and not to the heir, on the decease of the proprietor ; it is therefore liable to be seized on execution, and may be sold as other personal estate. An entry for the purpose of taking unripe corn or other produce, which would yield nothing, but in fact be wasted and destroyed by the very act of severing it from the soil, would not be protected by this decision." As a general rule, what may be taken in execution may also be attached ; and there is

Heard v. Fairbanks & another.

no doubt but what standing corn and potatoes in the ground, *and both ripe for harvest,* are the subject of attachment.

But the question to which our attention has been principally directed is, whether in this particular case there was in fact a valid attachment. The return, in point of form, may show an attachment ; but as between the owner and the officer, when the question arises, then the officer must show what he in fact did, to justify his return. In the present instance, the officer went into the field where the corn and potatoes were growing and fit to be harvested, and in writing appointed one Coggin as his agent to keep said corn and potatoes; and Coggin agreed to do it.

An attachment, in its very terms, implies the taking of possession of the property by the officer, and the keeping of it in his custody, so as to give him a qualified ownership in it, and the right of possession, until the action between the parties to the suit, on which it is attached, is determined by law, or by the agreement of the parties ; and he may employ an agent or sei vant to keep the goods and chattels for him. But still his pos session must be continued, or the attachment will be released. *Lane* v. *Jackson,* 5 Mass. 163, is a leading case on this subject, where the court say, " we are all of opinion, that to constitute an attachment of goods, the officer must have the actual possession and custody. This results from the legal import of the word ; and in this sense it is now to be understood. There certainly ought to be the same possession and custody on attachment, as on seizure by execution ; otherwise, an officer attaching would not be obliged by law to seize on execution because he had attached. But goods seized on execution must be sold at the expiration of four days after seizure, and the officer cannot sell unless he can deliver the goods to the purchaser." There are some cases which seem to speak a contrary doctrine, and in which attachments have been sustained, where the property, though personal, was not reduced to the actual possession of the officer ; such as the attachment of blocks of granite, a house on another person's land, a barn full of hay, &c. *Hemmenway* v. *Wheeler,* 14 Pick. 408. But these decisions were

10 *

not intended to disturb the law requiring the officer to take possession of personal property, but were merely relaxations of the rule on the subject, owing to the ponderous and bulky nature of the property to be attached ; and to meet such cases, adequate provision is now made in the Rev. Sts. c. 90, § 33. But in the case at bar, no such cause existed, and there is no reason for applying the doctrine of those cases at the present time. The officer making the attachment would probably now be held to adopt the provisions of those statutes, as to ponderous or bulky bodies, and failing to do that he might be held to the actual custody of the property attached. In this instance, there was no difficulty in harvesting the corn or digging the potatoes. They were ripe and fit to be gathered. They were of no value without being gathered ; and the officer could make no use of them, for the purpose of giving effect to his attachment, without severing them from the freehold. The attachment made by him was merely symbolical, and he might as well have remained in his house, with Coggin at his elbow, to give a receipt for the property, and call that an attachment, as to do what he did. That merely going over a fence into a field is taking possession of corn growing in it, or of potatoes in the ground, is a position that cannot be maintained. To have completed his attachment, it was his duty to have taken actual possession of the property, and to have put it in a place of safety, and that within a reasonable time after the attachment ; agreeably to the spirit of the wholesome provisions of the colony law of 1641, Anc. Chart. 98, " that no man's corn or hay that is in the field, or upon the cart, nor his garden stuff, nor any thing subject to present decay, shall be taken in distress, unless he that takes it doth presently bestow it where it may not be embezzled nor suffer spoil or decay, or give security to satisfy the worth thereof, if it comes to any harm." The officer had no more right to use the land or barn of the owner of the goods, for the custody of the property, without his consent, than that of a stranger. And supposing the attachment to have been rightfully commenced, still the possession was abandoned ; for an unreasonable time had elapsed before he made any attempt to reclaim the property, or to

assert his right to the same. For though the writ, on which the attachment was intended to be made, was returnable to a justice's court, yet the officer could not judge how long it would be before judgment would be rendered, nor how much of the thirty days after judgment, (if the plaintiff should prevail,) before the execution might be delivered to him — during which time he would be responsible for the property.

*Judgment for the defendant.*